Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| Joel O. Zambrana Rivera<br><br>Recurrido<br><br>vs.<br><br>NDA Services (Adriel Toyota), XYZ Insurance<br><br>Peticionario | TA2025CE00472 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV02707<br><br>Sobre: Represalias Ley 115-1991 Procedimiento Sumario Ley 2 de 17 de octubre de 1961 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de octubre de 2025.

Comparece NDA Services Corp. (NDA Services o parte peticionaria), quien nos solicita la revocación de una Resolución emitida el 18 de agosto de 2025[1], por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). Mediante el referido dictamen, el foro primario resolvió que existen hechos esenciales en controversia que impiden dictar sentencia sumaria.

Examinada la totalidad del expediente a la luz del derecho aplicable, expedimos el auto de Certiorari solicitado, y en su consecuencia, confirmamos el dictamen recurrido por los fundamentos que expondremos a continuación.

**I.**

El 15 de mayo de 2023, el señor Joel O. Zambrana Rivera (Sr. Zambrana o la parte recurrida) radicó ante el foro primario

---

[1] Notificada el 19 de agosto de 2025.

una Querella en despido injustificado por represalia en contra de NDA Services.[2] En esencia, la parte recurrida solicitó el pago de $57,321.26 en concepto de salario, más la compensación de una suma no menor de $50,000.00. por razón de los daños experimentados en angustias mentales.

Ante tales alegaciones, el 29 de mayo de 2023, NDA Services radicó su Contestación a la Querella. En síntesis, aseveró que, destituyó al Sr. Zambrana Rivera para garantizar el buen funcionamiento de la empresa, debido a que este no alcanzó el total de ventas requeridas dentro del periodo establecido por la empresa. Además, indicó que, la parte recurrida "proveyó información falsa, ocultó y/u omitió información durante el proceso de su reclutamiento".[3]

Concluida la etapa del descubrimiento de prueba, el 12 de marzo de 2024, la parte peticionaria presentó una Solicitud de Sentencia Sumaria Parcial respaldada en una serie de documentos. En su escrito, detalló que el Sr. Zambrana Rivera omitió información vinculada con su trasfondo laboral en el proceso de reclutamiento. Especificó, a su vez, que este incumplió con las cuotas de ventas establecidas por la empresa. Por lo anterior, precisó que el despido respondió a la crasa imprudencia, falta de lealtad, deshonestidad e insubordinación por parte del empleado. En efecto, solicitó que se dictara sentencia sumaria con el fin de desestimar las causas de acción, pues no existen hechos esenciales en controversia respecto a las causas que motivaron la destitución del empleado.

En desacuerdo, el 11 de abril de 2024, la parte recurrida sometió su Oposición a la Solicitud de Sentencia, a la cual adjuntó

---

[2] La parte recurrida instó esta acción legal al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 311, según enmendada. No obstante, el 31 de julio de 2023, el TPI dictó una Orden para tramitar el caso por la vía ordinaria.

[3] Entrada (9) del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).

varios documentos[4]. Respecto a los hechos del pleito, contextualizó que las ventas requeridas por su patrono no resultaban compatibles con el inventario de automóviles a nivel mundial durante la pandemia del año 2022. Manifestó que, ante las obligaciones desproporcionales exigidas en su empleo, experimentó acoso laboral, entiéndase, burlas y comentarios despectivos que le afectaron emocionalmente. Por tales circunstancias, expresó que recurrió al Centro de Mediación de Conflictos del Poder Judicial (Centro de Mediación). Sin embargo, tras acudir a ese foro, señaló que su patrono procedió a despedirlo el 26 de abril de 2023.[5] Así relatado, argumentó que, existen controversias sustanciales de hechos materiales respecto a las motivaciones de su despido, por lo que, no procede dictarse sentencia sumaria.

Por su parte, el 26 de abril de 2024, NDA Services presentó su Reacción a la Oposición a Solicitud de Sentencia Sumaria Parcial. Mediante este escrito, reiteró que debe dictarse sentencia sumaria, toda vez que no existen controversias de hechos sobre las causas que motivaron el despido de la parte recurrida. Ello, pues, según su postura, la destitución del Sr. Zambrana Rivera respondió a que este omitió información sobre sus empleos anteriores, y, además, incumplió con sus obligaciones de ventas.

Luego de una serie de incidencias procesales[6], cuyo tracto no amerita pormenorización, el 18 de agosto de 2025, el TPI dictó Resolución, notificada al día siguiente, en la que declaró No Ha

---

[4] **Mediante una Resolución emitida el 11 de agosto de 2025, el TPI determinó excluir unos documentos que el recurrido incluyó con su oposición, por no haber formado parte del descubrimiento de prueba. Inconforme con tal dictamen, el Sr. Zambrana Rivera recurrió el 12 de septiembre de 2025 ante este Tribunal de Apelaciones. Así las cosas, el 6 de octubre de 2025, esta Curia emitió una Sentencia (TA2025CE00442) en la cual expedimos el auto de Certiorari solicitado, y confirmamos la aludida Resolución.**

[5] Según alegó el Sr. Zambra Rivera, esa fecha coincidió con el día pautado por el Centro Mediación para la celebración de una vista.

[6] En aras de atender los argumentados levantados en la solicitud de sentencia sumaria, así como la oposición, el 6 de septiembre de 2024, el foro primario celebró una vista argumentativa, según consta en la Minuta, notificada el 4 octubre de 2024.

Lugar la solicitud de sentencia sumaria peticionada por NDA Services. En efecto, formuló (5) determinaciones de hechos materiales que están en controversia:

> *1. Si el querellante planteó las alegaciones de acoso laboral a su entonces patrono, NDA, dándole la oportunidad de implementar los protocolos internos de la empresa y cuál fue el resultado de tal gestión.*
>
> *2. Si NDA compareció ante el Centro de Mediación de Conflictos del Poder Judicial el 26 de abril de 2023 mediante algún representante.*
>
> *3. Si la causa ofrecida por NDA para despedir al querellante constituyó un mero pretexto ante el hecho de que había un trámite de mediación en curso por alegado acoso laboral y, por consiguiente, si hubo o no justa causa para el despido.*
>
> *4. Si el despido del querellante ocurrió en represalia por haber alegado el querellante acoso laboral al iniciar e trámite ante el Centro de Mediación de Conflictos del Poder Judicial.*
>
> *5. Si al querellante se le adeudan salarios y/o comisiones.*[7]

A tenor con lo determinado, el foro primario concluyó que existen controversias sustanciales en torno a los siguientes aspectos: (1) si el despido ocurrió por la conducta y el historial de la parte recurrida, o (2) si la destitución se trató de una actuación represalia por parte del patrono. Consecutivamente, resolvió que procede la celebración del juicio para atender los asuntos de credibilidad que están en disputa.

Inconforme, el 18 de septiembre de 2025, NDA Services recurrió ante nos mediante un recurso de *Certiorari*, en el cual esbozó los siguientes señalamientos de error:

> *Primer Error: Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la moción de sentencia sumaria parcial presentada por NDA.*
>
> *Segundo Error: Erró el Tribunal de Primera Instancia al resolver que las "Determinaciones de Hechos en Controversia" incluidas en la Sección III de la Resolución aquí recurrida constituyen hechos esenciales que impiden la adjudicación sumaria de las causas de acción de despido y de represalias.*

---

[7] Entrada 93 del SUMAC del TPI, a la pág. 12.

El 23 de septiembre de 2025, este Tribunal emitió una Resolución en la cual le concedimos a la parte recurrida un término a vencer el 3 de octubre de 2025, para someter su alegato en oposición. De conformidad con lo anterior, el Sr. Zambrana Rivera presentó un escrito intitulado Alegato en Oposición de la Parte Recurrida. Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.

## A.

Es norma reiterada que, el auto *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Art. 670 del Código de Enjuiciamiento Civil, Ley Núm. 6 del 31 de marzo de 1933, 32 LPRA sec. 3491. La característica distintiva de recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

En aras de orientar la discreción judicial, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita aquellas circunstancias que permiten la intervención de este Tribunal de Apelaciones para atender ciertas determinaciones interlocutorias:

> *El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o*

*resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.*

Nuestra autoridad se activa de mediar alguna de estas instancias. Ello, pues, la regla procesal aludida establece que ciertos dictámenes interlocutorios pueden: (1) afectar sustancialmente el resultado del pleito, o (2) tener efectos limitativos para la defensa o reclamación de una parte, o (3) conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847-848 (2023) (citando a e R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal *civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, Sec. 5515a, págs. 533).

No obstante, una vez se adquiere jurisdicción en virtud de la Regla 52.1 de Procedimiento Civil, *supra*, la expedición del auto y su adjudicación en los méritos es discrecional. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En armonía con lo anterior, la Regla 40 del Tribunal de Apelaciones, *In re* Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, a las págs. 62-63, 215 DPR __ (2025), delimita los siguientes criterios para ponderar la expedición del auto solicitado:

A. *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.*

B. *Si la situación de hechos planteada es la más indicada para analizar el problema.*

C. *Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.*

D. *Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.*

*E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

*F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

*G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Obsérvese que, la regla precitada facilita que la evaluación respecto a la expedición del recurso no transcurra en el vacío, ni en ausencia de otros parámetros. *IG Builders et al.* v. *BBVAPR*, a la pág. 338; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). Así pues, al examinar si procede la expedición del caso, nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración. *Torres González v. Zaragoza Meléndez, supra*, a la pág. 849. Por la naturaleza extraordinaria de este recurso, no debemos intervenir en las determinaciones de hechos del Tribunal de Primera Instancia, salvo que se pruebe que actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

**B.**

La sentencia sumaria es la herramienta procesal que procura la solución rápida, justa y económica de aquellos casos en los que no existen hechos materiales en controversia que ameriten la celebración de un juicio. *Soto y otros v. Sky Caterers*, 2025 TSPR 3, 215 DPR ___ (2025); *Oriental Bank v. Caballero García*, 212 DPR 678 (2023). En virtud de lo anterior, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite la presentación de una moción de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y

pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014);

*SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Ahora bien, la concesión de este mecanismo procesal no es automática. La parte opositora puede derrotar tal solicitud si presenta un escrito que establezca la existencia de hechos esenciales en controversia:

> *En la oposición a una solicitud de sentencia sumaria, el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. León Torres v. Rivera Lebrón, 204 DPR 20, 44 (2020); Roldán Flores v. M. Cuebas et al., 199 DPR 664, 677 (2018).*

Según la jurisprudencia, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, *supra*, a la pág. 679.

Una vez se presente la solicitud de sentencia sumaria y su respectiva oposición, conforme a los requisitos contenidos en la Regla 36.3(a) y (b) de Procedimiento Civil, *supra*, el foro primario deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. *Consejo Tit. v. Rocca Dev. Corp. et als.*, 25 TSPR 6, 215 DPR __ (2025); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 933 (2010). En cuanto a los documentos presentados, "éstos deben verse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos". *Medina v. M.S. & D.*

*Química P.R., Inc.,* 135 DPR 716, 735 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

No obstante, como regla general, no es aconsejable dictar sentencia sumaria si hay asuntos de credibilidad que ameritan la celebración de un juicio. A tales efectos, el Tribunal Supremo de Puerto Rico ha validado la aplicación de este mecanismo siempre y cuando no existan controversias esenciales sobre hechos materiales:

> *[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Soto v. Hotel Caribe Hilton, 137 DPR 294 (1994). Sin embargo, esto no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención —como pasa en un caso de discrimen— cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales. Ramos Pérez v. Univisión,* 178 DPR 200, 219 (2010). (Énfasis nuestro).

Efectuado ese análisis, el tribunal podrá dictar sentencia sumaria "si queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que es innecesaria una vista en los méritos". *Birriel Colón v. Econo y otro,* 213 DPR 80, 91 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). En efecto, la concesión de este recurso procede si de la prueba que acompaña a la moción surge preponderantemente la inexistencia de controversia sobre hechos medulares. *CSM v. ELA,* 2025 TSPR 78, 216 DPR ___ (2025); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024). Es decir, el foro primario deberá dictar sentencia sumaria cuando ante los hechos materiales no controvertidos: (1) el promovido no puede prevalecer frente al derecho aplicable, y (2) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la

controversia. *Oriental Bank v. Caballero García, supra,* a la pág. 679; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

No obstante, si el foro primario identifica hechos esenciales en controversia, le corresponderá denegar la solicitud de sentencia sumaria. En tales escenarios, deberá formular las determinaciones de hechos controvertidos e introvertidos, según exige la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4:

> *Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.*
>
> *A base de las determinaciones realizadas en virtud de esta regla el tribunal dictará los correspondientes remedios, si alguno.*[8]

Por último, si una parte está inconforme con el dictamen relacionado con la solicitud de sentencia sumaria, tiene derecho a recurrir a la etapa apelativa. En tales circunstancias, nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros, supra,* a la pág. 994; *Birriel Colón v. Econo y otro, supra,* a la pág. 91. Así que, ostentamos la facultad de examinar *de novo* el expediente y aplicar los criterios que exigen la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia interpretativa. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018). No obstante, nuestra autoridad revisora es limitada, pues solo podemos determinar si existe o no alguna controversia genuina de

---

[8] Este requisito opera únicamente cuando se deniega total o parcialmente una moción de sentencia sumaria. *Pérez Vargas v. Office Depot*, 203 DPR 687, 704 (2019).

hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114-155 (2015). Esta limitación responde a que carecemos de facultad para adjudicar hechos materiales en disputa, toda vez que esa tarea corresponde al foro primario. *Íd.*; *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

## C.

La Carta de Derechos de la Constitución de Puerto Rico, contempla una protección laboral contra riesgos a la salud o la integridad personal en el empleo, y también, garantiza el principio de igual paga por igual trabajo. Art. II, Sec. 16, Const. ELA, LPRA, Tomo 1. En virtud de esta cláusula constitucional, la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a, según enmendada (Ley Núm. 80-1976), tiene el propósito de proteger a los empleados de aquellas actuaciones arbitrarias por parte del patrono, mediante el establecimiento de remedios económicos que desalienten los despidos injustificados. *Méndez Ruiz v. Techno Plastics*, 2025 TSPR 68, 216 DPR __ (2025); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 770 (2022). Así pues, este estatuto de carácter reparador preceptúa que los empleados despedidos sin causa justificada tienen el derecho a recibir de su patrono una mesada. *Ruiz Mattei v. Commercial Equipment*, 214 DPR 407, 422-423 (2024).[9]

Ahora bien, no existe una prohibición absoluta contra el despido de un empleado. Más bien, se castiga aquel despido sin justa causa. *Rivera Figueroa v. The Fuller Brush*. Co., 180 DPR 894, 904 (2011). No obstante, aunque la Ley Núm. 80-1976, *supra*, no provee una definición respecto al despido injustificado, el

---

[9] Dicha mesada se computa a base del mayor número de horas regulares de trabajo del empleado, durante cualquier período de treinta días naturales consecutivos, dentro del año inmediatamente anterior al despido.

Art. 2 de este cuerpo legal delimita unas circunstancias específicas que justifican la destitución:

> *(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.*
>
> *(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.*
>
> *(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.*
>
> *(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.*
>
> *(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.*
>
> *(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.* 9 LPRA sec. 185b.

Nótese que, la Ley Núm. 80-1976, *supra,* no constituye un código de conducta, ni una lista de faltas definidas o taxativas, pues no pretende considerar la variedad de circunstancias y normas de los múltiples establecimientos de trabajo. *González Santiago v. Baxter Healthcare,* 202 DPR 281, 292 (2019); *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 930 (2015). Por ello, al atender estos casos, el foro adjudicador debe evaluar si el despido no está motivado por razones legalmente prohibidas y si es producto del mero capricho del patrono de conformidad con el Art. 2 de la Ley de Despido Injustificado, *supra.* Véase, además, *González Santiago v. Baxter Healthcare, supra*, a la pág. 292.

Cónsono con lo anterior, resulta importante establecer que, aunque no se avala el despido ante una primera sanción, "el citado estatuto no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran". *Feliciano Martes v. Sheraton*, 182 DPR 368, 383 (2011); *Rivera v. Pan Pepín,* 161 DPR 681, 690 (2004).

Por último, "[e]l esquema estatutario de la Ley Núm. 80, *supra,* establece una presunción de que todo despido es injustificado y le impone al patrono el deber de demostrar, mediante preponderancia de la prueba, que hubo justa causa para el mismo". *Ortiz Ortiz v. Medtronic, supra,* a la pág. 774; *Rivera Figueroa v. The Fuller Brush.* Co., *supra,* a las págs. 906-907. Así pues, al patrono le corresponde derrotar la presunción de que "todo despido es injustificado". *Rivera Figueroa v. The Fuller Brush Co, supra,* a la pág. 906. En esa dirección, tiene sobre sí "la carga probatoria de justificar en la afirmativa su actuación, exponiendo en la contestación a una querella los hechos que dieron origen al despido". *Feliciano Martes v. Sheraton, supra,* a la pág. 385. Véase, también, *Báez García v. Cooper Labs., Inc.,* 120 DPR 145, 152 (1987).

### D.

La Ley Contra el Despido Injusto o Represalias a Todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, 29 LPRA sec. 194, según enmendada (Ley Núm. 115-1991), salvaguarda a los trabajadores contra posibles represalias por parte de los patronos, motivadas por el ofrecimiento de algún testimonio o alguna información ante ciertos foros.[10] *Velázquez*

---

[10] El Art. 1 de la Ley Núm. 115-1991, *supra,* dispone que esta protección aplica a patronos públicos o privados.

*Ortiz v. Mun. de Humacao*, 197 DPR 656, 668-669 (2017); *Cordero Jiménez v. UPR*, 188 DPR 129, 136 (2013). En esa dirección, "[e]l historial legislativo es claro al expresar que la Ley Núm. 115 pretende conferir la mayor protección posible a los trabajadores". *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 164 (2007). Así, pues, este es un estatuto de carácter reparador, basado en la política pública de alta estima a la protección de los derechos de los trabajadores, por lo que, su interpretación judicial debe ser liberal y amplia de manera que se alcancen los objetivos que la originaron. *Cordero Jiménez v. UPR, supra*, a la pág. 145.

En consonancia con lo discutido, el inciso (a) del Art. 2 de la Ley Núm. 115-1991, *supra*, prohíbe los actos constitutivos de represalia:

> *Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.* 29 LPRA sec. 194b.

Al amparo de esta protección, esta pieza legislativa contempla una causa de acción en respuesta a aquellos contextos en el que el empleado realiza una actividad protegida, y luego es despedido, amenazado o discriminado. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 361 (2009); *Rivera Prudencio v. Mun. de San Juan, supra*, a la pág. 159. A tales efectos, la Ley Núm. 115-1991, *supra*, fija dos vías probatorias para sostener esta causa de acción. *Velázquez Ortiz v. Mun. de Humacao, supra*, a la pág. 670. Veamos.

De acuerdo con el inciso (c) del Art. 2 de la ley aquí discutida, el demandante puede probar la violación mediante la presentación de evidencia directa o circunstancia. 29 LPRA sec. 194b. Igualmente, puede establecer un caso *prima facie* de violación a la ley al probar que: (1) participó en una actividad protegida por esta ley, y (2) que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo, según permite el inciso referido. Íd.

Si el empleado presenta la prueba, según se explicó, entonces el patrono debe alegar y fundamentar una razón legítima y no discriminatoria para el despido. Íd.  No obstante, si el patrono demuestra que cumple con lo anterior, le corresponde al empleado demostrar que el patrono tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida.  *Velázquez Ortiz v. Mun. de Humacao, supra,* a la pág. 671.    En esa dirección, la relación de causalidad puede establecerse mediante el criterio de proximidad temporal, es decir, que la acción adversa ocurrió luego de participar en una actividad protegida. Íd.

Sin embargo, el criterio de proximidad temporal no aplica en todos los casos.  En vista de tales circunstancias, el Máximo Foro estatal ha adoptado la siguiente normativa:

> *[N]o todo caso se configura dentro de un espacio temporal que pueda catalogarse como de poco tiempo. Ante tales circunstancias, la proximidad temporal, como inferencia de causalidad, resulta insuficiente, por lo que se requiere entonces que el empleado constate elementos adicionales que comprueben la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa. Así, el trabajador deberá presentar evidencia que establezca: (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagónica en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Lo anterior implica, necesariamente, un acercamiento caso a caso. Feliciano Martes v. Sheraton, supra,* a la pág. 400.

**E.**

La Exposición de Motivos de la Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico, Ley Núm. 90-2020, 29 LPRA sec. 3113, según enmendada (Ley Núm. 90-2020 o Ley de Acoso Laboral), establece que el acoso en el ámbito laboral puede subvertir de forma implícita o explícita los términos o las condiciones del empleo de una persona. Además, puede interferir irrazonablemente con el desempeño laboral, su salud física y emocional, así como con su estabilidad y su seguridad en el empleo, entre otros extremos. Íd.

Con el fin de proteger los derechos de los trabajadores, el Art. 5 de la Ley de Acoso Laboral, *supra*, dispone que el patrono será responsable civilmente si incurre en las siguientes actuaciones:

> *Todo patrono que incurra, fomente o permita el acoso laboral, será civilmente responsable frente a las personas afectadas. Será responsabilidad de todo patrono tomar las medidas necesarias para eliminar o reducir al mínimo la ocurrencia del acoso laboral en el lugar de trabajo. Por lo que, todo patrono adoptará e implementará las políticas internas necesarias a los fines de prevenir, desalentar y evitar el acoso laboral en sus centros de trabajo, así como también investigará todas las alegaciones sobre el particular e impondrá las sanciones correspondientes en aquellos casos en que procedan.* 29 LPRA sec. 3115.

En *Reyes Berríos v. ELA*, 213 DPR 1093, 1105 (2024), el Tribunal Supremo de Puerto Rico, precisó —al interpretar el texto legal de este acápite— que previo a la presentación de una reclamación judicial, el empleado deberá utilizar los procedimientos y los protocolos adoptados por el patrono y, de ser infructuosa tal gestión, le competerá recurrir al Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial. Véase, también, Art. 10 de la Ley Núm. 90-2020, *supra*, 29 LPRA sec. 3120.

Ahora bien, para determinar qué constituye acoso laboral, el Art. 8 de la Ley Núm. 90-2020, *supra*, delimita los siguientes escenarios:

*La determinación de si una conducta constituye o no acoso laboral en el empleo, dependerá de la totalidad de las circunstancias y los hechos probados en cada caso en particular. Se considerará conducta constitutiva de acoso laboral, pero sin limitarse a, actos como los que se desglosan a continuación:*

*(1) Las expresiones injuriosas, difamatorias o lesivas sobre la persona, con utilización de palabras soeces.*

*(2) Los comentarios hostiles y humillantes de descalificación profesional expresados en presencia de los compañeros de trabajo.*

*(3) Las injustificadas amenazas de despido expresadas en presencia de los compañeros de trabajo.*

*(4) Las múltiples denuncias disciplinarias de cualquiera de los sujetos activos del acoso, cuya temeridad quede demostrada por el resultado de los respectivos procesos disciplinarios.*

*(5) La descalificación humillante sobre propuestas u opiniones de trabajo.*

*(6) Los comentarios o burlas dirigidos al empleado sobre la apariencia física, la forma de vestir, o peinados protectores y texturas de cabello que regularmente se asocian con identidades de raza y origen nacional particulares, formuladas en público.*

*(7) La alusión pública a hechos pertenecientes a la intimidad personal y familiar del empleado afectado.*

*(8) La imposición de deberes patentemente extraños a las obligaciones laborales, las exigencias abiertamente desproporcionadas sobre el cumplimiento de la labor encomendada y el brusco cambio del lugar de trabajo o de la labor contratada sin ningún fundamento objetivo referente al negocio o servicio a que se dedica el patrono.*

*(9) La negativa del patrono u otros empleados a proveer materiales e información de naturaleza pertinente e indispensable para el cumplimiento de labores.*

*No se considerará conducta constitutiva de acoso laboral sin ser un listado taxativo, actos como los que se desglosan a continuación:*

*(1) Actos destinados a ejercer la potestad disciplinaria que legalmente corresponde a los supervisores sobre sus subalternos.*

*(2) La formulación de exigencias para protección de la confidencialidad en los servicios a los que se dedica el patrono o la lealtad del empleado hacia su patrono.*

*(3) La formulación o promulgación de reglamentos o memorandos para encaminar la operación, maximizar la eficiencia y la evaluación laboral de los empleados en razón a los objetivos generales del patrono.*

*(4) La solicitud de cumplir deberes adicionales de colaboración cuando sea necesario para la continuidad del servicio o para solucionar situaciones difíciles en la operación y servicios que ofrece el patrono.*

*(5) Las acciones administrativas dirigidas a la culminación de un contrato de trabajo, con justa causa o por periodo fijo de tiempo, previsto en el ordenamiento jurídico de Puerto Rico.*

*(6) Las acciones afirmativas del patrono para hacer cumplir las estipulaciones contenidas en los reglamentos de administración de recursos humanos o de cláusulas de los contratos de trabajo.*

*(7) Las acciones afirmativas del patrono para que se cumplan con las obligaciones, deberes y prohibiciones que rigen por ley.* 29 LPRA sec. 3118.

Así que, si el empleado experimentó una conducta constitutiva de acoso laboral, le corresponderá probar la violación mediante evidencia directa o circunstancial, según dispone el inciso (b) del Art. 7 de la Ley de Acoso Laboral, *supra*, 29 LPRA sec. 3117. Además, dicho inciso prescribe que, el empleado podrá establecer un caso *prima facie* al probar que denunció un acto de acoso laboral y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Íd. Una vez el empleado establezca lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. Íd. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. Íd.

### III.

De entrada, establecemos que, de conformidad con los criterios recogidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, este foro apelativo intermedio se encuentra en posición de expedir el auto solicitado. En virtud de la discreción que poseemos, procedemos a resolver la controversia ante nuestra consideración.

En el recurso de epígrafe, NDA Services nos invita a revocar una Resolución emitida por el foro primario que denegó una

solicitud de sentencia sumaria presentada por esta. Asevera que destituyó a la parte recurrida, toda vez que ocultó información sobre su trasfondo laboral, y, además, incumplió con la cuota de ventas requeridas por la empresa. En vista de ello, reitera el TPI debe dictar sentencia sumaria, pues considera que no existen controversias sustanciales de hechos respecto a las causas que motivaron el despido.

Por su parte, el Sr. Zambrana Rivera señala que, el tribunal recurrido actuó correctamente al denegar la solicitud de sentencia sumaria. Asegura que, existen hechos esenciales en controversia respecto a las causas que motivaron el despido. Al respecto, aduce que, experimentó una situación de acoso laboral que le requirió acudir al Centro de Mediación de Conflictos del Poder Judicial. Precisa que una vez recurrió a dicho foro, la parte peticionaria procedió a despedirlo en represalia. Por tales circunstancias, sostiene que existen asuntos de credibilidad que ameritan la celebración de un juicio.

En el caso que nos ocupa, nos compete discutir los señalamientos de error (1) y (2) concernientes a la denegatoria de la sentencia sumaria, los cuales abordaremos conjuntamente por estar íntimamente relacionados. A esos efectos, en primer lugar, disponemos que examinada *de novo* la solicitud de sentencia sumaria, así como su respectiva oposición, determinamos que ambos escritos exhiben de modo íntegro los criterios que dimanan de la Regla 36.3 de Procedimiento Civil, *supra.*

Así precisado, en segundo lugar, nos compete establecer si actuó correctamente el foro primario al denegar la solicitud de sentencia sumaria. Evaluada con detenimiento la totalidad del expediente ante nuestra consideración, resolvemos que el TPI no incidió al acoger tal proceder. Adelantamos que existen controversias sustanciales de hechos esenciales sobre las causas

que motivaron el despido del Sr. Zambrana Rivera, lo cual impide dictar sentencia sumaria. Veamos.

Surge de la prueba documental presentada por la parte peticionaria que, el 17 de abril de 2023, NDA Services le remitió a la parte recurrida una carta intitulada Acción Correctiva Escrita, cuyo contenido esbozamos a continuación:

> *Estimado(a) empleado(a):*
>
> *Sirve este documento para notificarle, que en el mes de marzo usted realiz[ó] dos ventas por lo que no cumplió con la cuota establecida.*
>
> *Durante varias semanas su supervisor inmediato le ha indicado en repetidas ocasiones que debe mejorar sus ventas para que pueda alcanzar la cuota establecida. Su incumplimiento con la cuota es una violación a sus acuerdos contractuales con la empresa. Le recordamos que continuaremos monitoreando el cumplimiento de cuota mensualmente. **De no cumplir seguiremos con un segundo memo escrito. Estas medidas estarán vigentes en el expediente del empleado por 12 meses**.*
>
> *Estos a su disposición para aclarar las expectativas esperadas de las Compañía y le exhortamos a mejorar su desempeño.*[11] (Énfasis nuestro).

No obstante, previo al cumplimiento del término de los 12 meses contemplado en el comunicado que antecede, el 26 de abril de 2023, NDA Service le notificó una segunda carta al Sr. Zambrana Rivera para informarle sobre su despido:

> *NDA Services Corp. (Adriel Auto) ha decidido terminar su empleo con la compañía efectivo hoy 26 de abril de 2023. Esta determinación es el resultado de un análisis que considera, entre otros elementos, el hecho recién conocido de que usted proveyó información falsa, ocultó y/u omitió información durante el proceso de reclutamiento y su desempeño.*
>
> *Sin otro particular, se procesará la liquidación de aquellos haberes a los que pueda tener derecho.*[12]

A base de la prueba documental reseñada, colegimos que existen controversias sustanciales de hechos materiales en cuanto a las causas que motivaron el despido en cuestión. En esta etapa no podemos precisar si el despido responde a la conducta

---

[11] Entrada 53 del SUMAC TPI.
[12] Entrada 53 del SUMAC TPI.

desplegada por el recurrido en su proceso de reclutamiento, o si, en efecto, la actuación del patrono constituye un acto represalia, tras el Sr. Zambrana Rivera recurrir al Centro de Mediación de Conflictos.

Tampoco podemos establecer con la prueba documental presentada si el recurrido agotó los procedimientos adoptados por su patrono, previo a acudir al referido Centro de Mediación en atención al alegado acoso laboral que experimentó, según exige el Art. 10 de la Ley Núm. 90-2020, *supra*. Contemplamos, además, que la documentación anejada por la parte peticionaria no nos permite resolver sumariamente si el patrono le adeuda salarios o comisiones al Sr. Zambrana Rivera.

En efecto, subrayamos que, tales controversias sustanciales sobre los hechos materiales pueden afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Véase, *Oriental Bank v. Caballero García, supra*, a la pág. 679. Por consiguiente, razonamos que no resulta viable dilucidar tales asuntos de credibilidad por la vía sumaria, por lo que, procede la celebración de un juicio.

A la luz de lo anterior, reiteramos que, el TPI actuó conforme a derecho al denegar la moción de sentencia sumaria presentada por NDA Services. Por tal razón, nos corresponde ser deferentes al dictamen recurrido, el cual procura alcanzar una solución justa sustentada en la prueba que desfilará durante la celebración del juicio. En virtud de ello, confirmamos la Resolución impugnada, pues no denota prejuicio, parcialidad o error manifiesto en la aplicación de norma procesal o sustantiva por parte del foro primario.

**IV.**

Por los fundamentos que anteceden, los que hacemos constar en este dictamen, expedimos el auto de *Certiorari*

solicitado, y en su consecuencia, confirmamos la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelacione